ALEJANDRO ALVE
B-77176    B2-239L
P.O. BOX. 5002
CALIPATRIA, CA., 92233-5002



FILED

JAN 2 5 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

2254 ✓    1983

FILING FEE PAID

Yes ✓    No ✓

IFP MOTION FILED

Yes    No ✓

COPIES SENT TO

Court ✓    Pro Se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 0162 W LSP

Civil No. _____

ALEJANDRO ALVE
            Petitioner

V

L.E. SCRIBNER, WARDEN
            Respondent.

UNDER  28 U.S.C. §2254·

BY A PERSON IN STATE CUSTODY



ALEJANDRO ALVE
B-77176    B2-239L
P.O. BOX. 5002
CALIPATRIA, CA., 92233-5002


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA


|  |  |
|---|---|
| ALEJANDRO ALVE<br><br>       Petitioner,<br><br>V.<br><br>L.E.  SCRIBNER, WARDEN<br><br>       Respondent. | Civil No._____<br><br>PETITION FOR WRIT OF HABEAS CORPUS<br><br>    UNDER 28 U.S.C. §2254<br>BY A PERSON IN STATE  CUSTODY |


This Petition concerns:

### Parole

1. Name of Court that entered the judgment of conviction:

    Superior Court, County of San Diego

2. Date of judgment of conviction:

    10/6/76

3. Trial Court case number of the judgment of conviction:

    CR 36086


1

4.  Length of sentence:

> 7 Years to Life with [possibility] of parole

5.  Nature of offense of criminal conviction:

> Count One:  First Degree Murder with use of firearm

6.  Penal or other code sections:

> §187;  §12022.5

7.  Plea was:

> Not Guilty

8.  Kind of trial:

> Jury

9.  Testified at trial?

> No.

10.  Direct Appeal:

> Judgment of conviction was appealled

11.  California Court of Appeal:

> (a) Result:  AFFIRMED
> (b) Date of result:  UNKNOWN
> (c) Case Number:  UNKNOWN
> (d) Grounds raised on Direct Appeal:  UNKNOWN

12.  California Supreme Court:

> UNKNOWN IF PETITION FOR REVIEW WAS SOUGHT

13.  Administrative Review:

                    Exhausted


14.  State Remedies:

                    Exhausted     (See EX. #12)



   Petitioner approaches this Court to seek relief against the Board of Prison

Terms (BPT) Panel's decision on Parole suitability held on November 16, 2005.

Petitioner contends that the Board of Prison Terms decision was arbitrary, based

on capriciousness and abuse of discretion in violation of the Indeterminate

Sentence Law (ISL), and  Statutes governing  suitability for parole (§3041;

§2402; §2250).  Petitioner further contends that the State Court's decision is

not supported by the evidence in the record; and is contrary to the State's

Statutory scheme of Penal Code §3041(a)(b); §2402(a) and the Due Process Clause.

3

INTRODUCTION

On July 9, 2004, Petitioner was informed that his subsequent BPT Hearing #7 would be held on November of 2004 1/ Consequently, Petitioner was called in to Counselor Nieto's office, his then Counselor representing his Central File Record, and was asked to sign all documentation relevant to the BPT Hearing. Petitioner signed all documentation required to comply thus with the prerequisite, including BPT Form #1003. According to the Guidelines set out by California Code of Regulations, Title 15, §2256(c), Petitioner was eligible for state appointed attorney due to he having less than $1,500.00 in his Trust Account Fund. Accordingly, he signed the Form #1003 (See EX. #1)

However, due to BPT numerous "delays" the BPT Hearing was re-scheduled on several occasions.

Sometime on April of 2005, Petitioner was informed that the final schedule was set for May 11, 2005; and was being represented by Mr. Korin, Attorney at Law.

Not having been seen by a psychologist, on April 27, 2005, Petitioner sent a "request" to the Chief Medical Officer requesting a Psychiatric Evaluation before the aforementioned BPT Hearing deadline, i.e., May 11, 2005. The Chief Medical Officer responded stating:

"Mr. Alve, unfortunately Dr. Levin has no control over the scheduling of psychiatric Evaluations Sacramento office will notify the psych Dept. before -our BPT date." (See EX. #2)

Not having been called in by the psychologist by May 10, 2005, Petitioner assumed Sacramento had not ordered the Psychiatrict Evaluation Report because none was needed. However, on May 11, 2005, prior to appearing before the BPT Panel, while in conference with Mr. Koring, Attorney at Law, the BPT Panel sent a message to Mr. Koring requesting him to inform Petitioner that there was no Psych Report of File, adding, "If you appear before the Hearing today, without the Psych Report, you will be denied parole."

---

1/ All documentation submitted to the BPT prior to the Original scheduled Hearing was dated September of 2004, such as Family Letters of Support (RT 29-31)

4

Thereupon, Petitioner explained to Attorney Korin about his efforts to get the Psych Report prior to the BPT Hearing's deadline; and showed him the response received from the Chief Medical Officer to his request.. Attorney Koring immediately took the document to the BPT panel. Upon his return he informed Petitioner that the BPT Panel was adamant; adding, "If you go tehre, before them, they will deny you. So they say to postpone the Hearing for 3 weeks to get the Psych Report. It's up to you." Petitioner was compelled to postpone the Hearing. (See EX. #3 ) But isntead of "3 weeks" it took 6 months. On May 12, 2005, Petitioner sent a letter to complain to Sacramento (See EX. # 4 )

On August of 2005, Counselor Orman, CCI, approached the Petitioner informing him that a "New date" had been scheduled for the BPT Hearing. He asked Petitioner if he wanted to review his Central File Record (Olson Review) again. Petitioner declined. He further, asked Petitioner to sign the BPT Form #1003. Petitioner indicated to him that the Pending BPT Hearing, was a Postponed Hearing not a "new Hearing "; and told him that the state had already appointed him an attorney to represent him at the Hearing, addign that he could not sign on the doted line because he now had more thatn $1,500.00 in the Trust Account Fund, and therefore to do so would be "perjury." Counselor Orman wrote , on the form, Petitioner's statement (RT. 23-24) (See EX. #5)

On November 16, 2005, Petitioner appeared before the BPT Hearing. Was denied parole for 3 years (See EX.#6 )

/ / /

/ / /

/ / /

5

BPT PANEL'S RENDERED DECISION  OF UNSUITABILITY FOR PAROLE
WAS ARBITRARY BASED ON CAPRICIOUSNESS AND GROUNDED IN ABUSE
OF DISCRETION IN VIOLATION OF BOTH LAW (ISL)AND PETITIONER'S
RIGHT TO A FAIR HEARING

I

## A.   Standard of Review

The  Board  of  Prison Terms is authorized by statute to determine parole
suitability,  and  to  exercise  its  discretion  in deciding whether to grant
or deny parole.   That  decision,  although  broad, is not absolute and the
Board's  decision  must  be  supported by "some evidence"  Penal Code §§ 3040,
5075 et. seq. Fain (1983 )  145  Cal.  App.  3d 540, 548; In re Powell (1988)
45  Cal.  3d  894,  902-904;  Terhume V Superior Court (1998) 65 Cal. App. 4th
864,  872-873,  and  said  decision must be guided according to the Guidelines
set  out  in  section  §2402  of the California Code of Regulations, Title 15.

Subdivision  §2402(a)  provides that, "regardless of length of time served,
a  life  prisoner  shall  be  found unsuitable for and denied parole if in the
judgment  of the panel the prisoner will pose an  unreasonable risk to society
if released from prison.

Subdivision (b) of section §2402 directs the panel to consider "all relevant,
reliable  information  available"  to  it,  including the circumstances of the
prisoner's  social  history;  past  and  present  mental state; past criminal
history;  the  underlying  conviction and other commitment offenses, including
behavior before,  during  and  after  the  crime; any conditions of treatment
or  control,  including the use of special conditions under which the prisoner
may  safely  be  released  to  the  community; and any other information which
bears  on  the  prisoner's suitability for release.  Circumstances which taken
alone  may  not  be  firmly establish  'unsuitability for parole may contribute
to a pattern which results in a finding of unsuitability.

Thus,  under  both  the  state  and federal due process clauses, prisoners
have  the  right  to a fair hearing at which the decision is based on relevant
evidence.   In  re  Powell,  supra,  45 Cal. 3d at pp. 902-904; Superintendent
V  Hill  472  U.S.  at p. 454; People V Ramirez  25 Cal 3d at p. 268 ["When an

6

individual is subjected to deprivatory governmental action, he always has due process interest both in fair and unprejudiced decision making and in being treated with respect and dignity"], See also Hernandez V Department of Motor Vehicles (1981) 30 Cal. 3d 70, 81, fn. 12.


**B. Continued Incarceration Is Completely Inconsistent With The ISL Objective.**

Petitioner contends that under the Indeterminate Sentence Law (ISL), he is entitled to parole when he no longer is an unreasonable danger to the public Penal Code §3041(a); Code Regs., Title 15, §2402(a). The intent of the law is to release prisoners when they are ready to reenter society, not to punish them forever by continued incarceration In re Minnis, 7 Cal. 3d at 664. The determination of when a prisoner is ready for release necessarily entails an investigation into his post-conviction conduct.

Petitioner's post-conviction record encompasses a period of over 30 years. The record shows that while in prison he received his GED Certificate, High-School Diploma, and attended College until the College Program was suspended in the CDC system; receiving the Highest Honors Certificate from Sacramento City College. (See Ex. # 7 ; RT. 63-64)

The record also shows that although Petitioner entered the CDC system knowing little English and was barely literate, he is now a poliglot who knows English, Spanish, German, hebrew, Nahualtl, and some Chinese (RT. 39, 48)

Also, through this period of 30 years, he has acquired several viable, marketable skills that would readily enable him to get employment, for example, in upholstery, tailoring, carpentry, cut and confection, machine operator, optical technological skills (RT. 39; 66). Moreover, on every job position that Petitioner has been assigned to , his Work Performance Reports have been from excellent to exceptional with emphasis on perfect attendance; and described as detailed oriented, responsible, professional and a workhorse. (See Ex. # 8 RT. 39, 41, 54) In addition, every skill/trade that he has acquired, upon completing all aspects of the basic hands-on training, he has been appointed, by his Supervisors, to the position of Teacher's Aide and/or foreman to assist

other prisoners in the trade (See EX.#9    RT. 41).

Moreover, as of 2002, Petitioner has participated in the established Honor Block Progrram at Calipatria State Prison. The record shows that on October, 2002, due to Petitioner's examplary disciplinaty free conduct of approximately 17 years, he qualified to participate in the "B1" and "B2" Honor Block Program. (RT. 34)  A program which offered prisoners with a disciplinaty free conduct of at least 5 years an opportunity to participate in Vocational Training Programs and special programs entitled only to prisoners who had qualified for the Honor Block Program [Now named: Inmate Work Training Program Units (IWTIPHU)] (See EX. #10    RT. 38-39, 64)

Further, although Petitioner has lived for the past 30 years of his life in the midst of a violent environment where the joining of prison gangs is the way of life to lose the fear to face life; and to fall into drugs the means to confront the terror of death in an environment where shootings, stabbings, throat slashings, and outright killings is the Cardinal Rule to follow to settle matters, Petitioner's Central File Record shows no prison gang involvement, no drug and alcohol involvement, and no violence whatsoever. (EX. # 11 ;    TR. 40, 44, 54, 55, 69)

## C.  BPT Panel's Failure To Follow The Law And Applicable Regulations Violated Petitioner's Substantive Due Process Rights.

Here, beside the commitment offense, BPT Commissioners did not point to any adversed evidence in Petitioner's Central File Record that would have supported Petitioner was not suitable for parole under the applicable BPT Regulations (RT. 66-69).

In Petitioner's Central File Record, there is no evidence that Petitioner has a history of violence (RT. 17) [§2402(c)(2); §2402(d)(1) ; §2402(d)(5)]; that he has unstable social history(RT. 29-30, 55) [§2402(c)(3); §2402(d)(2)]; that he has a lengthly history of mental problems (RT. (See EX. #11.  TR. 64) [§2402(c)(5); §2402(d)(5)]; that he has engaged in serious, violent misconduct in prison (RT. 34, 38-39, 63-64) [§2402(c)(6); §2402(d)(8)]; or that he has and or had an escalating pattern of criminal conduct or violence (RT. 17)

8

[§2402(d)(1); §2402(d)(5); or that he is a danger to the public. In re Stanley (1976) 54 Cal. App. 3d 1030, 126 Cal. Rptr. 524; People V Moorse (1964) 60 Cal. 2d 631, ʷ36 Cal. Rptr. 201, 388 P. 2d 33.

Here the only "factors" discussed by the BPT Commissioners to deny Petitioner parole was the underlying conviction (RT 67, 72)

The exclusion of the overwhelming evidence in the record of Petitioner's rehabilitation from the BPT panel's decision making to deny parole violates BPT Regulations and the Indeterminate Sentence Law Statute's objective, i.e., to punish the criminal conduct rather than the crime. Penal Codes: §3040, §3041; §2402; §5075; §2402(a); In re Fain (1976) 65 Cal. App. 3d 376, 389, 135 Cal. Rptr. 543; In re Seabock (1983) 140 Cal. App. 3d 29, 32 (f. 3)


D.   **BPT Panel's Extraneous Claims Not Revelant To BPT Suitability For Parole Procedure; And Deliberate Distortion of Facts On The Record Violated Petitioner's Right To A Fair Hearing.**


In the absence of any adverse record against Petitioner to justify the BPT Panel's parole denial, the Commissioners resorted to extraneous claims and distortion of facts on the Record to prejudice Petitioner, i.e., distorting evidence in the Central File Record, by making the following statements and accusations:

1). As was explained at the beginning under INTRODUCTION at page #7 & #8, on February 2005, Petitioner was informed that the date established by Sacramento was finally set for May 11, 2005. Accordingly, Petitioner was called in to Counselor Nieto's office and signed all the BPT Forms relevant to the scheduled BPT Hearing. Among these forms was BPT Form #1003. Because Petitioner had less than $1,500.00 in his Trust Account Fund; and therefore was eligible under California Regulations, Title 15, section §2256(c) for a state appointed attorney, he signed the form (See EX. #1)

Consequently, when he was approached to sign the BPT Form #1003 for the second time on June, 2005, Petitioner explained to Counselor Orman, CCI, that he had already signed it; and that an attorney had been appointed to him to represent him at the BPT Hearing, i.e, Mr. Korin, Attorney at Law;

9

Adding, that he believed that the same attorney would be representing him at the BPT Hearing because the BPT Hearing was not a "new" Hearing but rather a postponement from the same BPT Hearing. (See EX. #3)

Despite the fact that this evidence was before the BPT Panel in its full, the Commissioners referred to Petitioner's abstention from signing the BPT Form #1003, a "scheme" from an "intelligent bright person with a kind of selective wisdom, when it benefits you." (RT. 21-26, 35)

2). As the record shows, Petitioner's Federal Civil Suit submitted before the Courts on 2000, became an issue against the Petitioner. Commissioner Bentley's obsesion with Petitioner's Federal Civil Suit demonstrates the level of bias and animosities the Commisioner has against prisoners who exercise their right to approach the Courts to seek relief against CDC Staff's malfeasance or to challenge prison conditions via law suits. (RT. 32-35, 44-47, 69) The Commissioner stated:

"do you pay your room and board here?"; (RT. 46); "And what else do you do in your spare time?" (RT. 47)

Here, it is apperant that Commissioner Bentley's bias and personal animosities against prisoners who approach the courts to complain against staff and/or living conditions prejudiced the Petitioner. (RT. 56, lines: 7-10)

3). Further, notwithstanding the Transcripts from both High-School and College are in the "Education File", Commissioner Bentley implicated that Petitioner High-School Diploma was false (RT. 39) [2]/

_____

[1]/ The 1980 graduation held at Folsom State Prison was a historical event covered by the media as it was teh first time in history that prisoners were being graduated from High-School, College and University; and receiving from the Board of Education GED Certificates, High-School Diplomas, College and University Degrees and Certificates of Highest Honors; A time when the Board of Education offered prisoners "Equal Education."

4). The fact that the BPT Commissioners were aware of the evidence before them that Petitioner was never charged with the murder of a Mr. Bemer; and that the information about Mr. Bemer's murder was submitted by the D.A. by "mistake"(?), the BPT Commissioners, nevertheless, proceeded to imply that Petitioner was implicated in the murder of Mr. Bemer (RT. 28, 50). The colloquy between the Commissioners was as follows:

DEPUTY COMMISSIONER BENTLEY:    "Well he was killed in Balboa Park the night that Mr. Dores was killed and shot with the same gun that Mr. Dores was killed with."

PRESIDING COMMISSIONER SAWYER:    "Same caliber."

DEPUTY COMMISSIONER BENTLEY:    "Same--but there was no conviction"

PRESIDING COMMISSIONER SAWYER:    "Right"

(RT 50)

5). There was also a deliberate misquotation of Psychologist, Dr. John Belliger's Recommendations made by Presiding Commissioner Sawyer. The misquotation is as follows:

"He has not seen the need of alcohol or drug treatment" (RT. 65, line 12)

The true statement written in the Mental Health Evaluation submitted by Psychologist, Dr. John Belliger reads as follows:

"He is not seen in need of drug or alcohol treatment." (See Ex. #11, at p. 4)

Petitioner contends that the purpose of the deliberate "misquotation" was to imply that Petitioner had refused to attend AA Meetings when these were recommended by the Psychologist as part of treatment programs.

As the record shows, when Petitioner informed the Commissioner that the Psychologist did not recommended any further treatment programs within the

11

prison environment (system), Deputy Commissioner Bentley stated: "Can the Psychologist grant you parole?" (RT 43)

Petitioner contends that the Commissioner's statement gives clear evidence that the MENTAL HEALTH EVALUATION REPORT for which the BPT Hearing was "post-poned" for 6 months, and that it was requested by the BPT Panel to "assesses Petitioner's dangerousness" and "clinical level of functioning" had absolutely no value in decision making (See EX. #11) The statement, "Can the psychologist grant you parole?" demonstrates that, to the Commissioner, granting and/or denying parole is not dependent upon BPT Statutes, Law or documentation sub-mitted for consideration in decision making, but rather on the Commissioner's capriciousness, bias, and self-endowed unfettered discretion resulting in misapplication of BPT existing Guidelines and the Law. (RT 43) <u>Penal Codes:</u> §3041, §3040; §2402

6). In addition, Commissioner Sawyer further distorted the record when deliberately made the statement that Petitioner had been charged with "Theft" in 1965 and had served 16 days in jail for it. (RT 63)

The record shows that Petitioner had been in the County Jail not for "Theft" but for a "Ticket" for drunk driving for which he was placed in the County Jail for 16 days and paid a fine. (RT 71)

E. <u>BPT Penal's Determination That Petitioner Is Unsuitable For Parole Was Arbitrary Based On Capriciousness And Grounded In Abuse Of Discretion.</u>

Petitioner contends that the decision rendered by the BPT Commissioners was arbitrary, based on personal bias, capriousness and grounded on abuse of discretion.

Here, the evidence shows that the Petitioner has met all the demanding criteria for parole. As shown by the record, at the last BPT Hearing Petitioner was told and was recommended that he upgrade academically and he did so. He enrolled in the Eyewear Vocational Training Program. He finished and completed all aspects on the basic hands-on training; tehreupon was assigned in the position of Teacher's Aide to assit students in the trade. (RT 38-39, 40, 54; See EX. #9)

12

Further, he qualified to participate in the "Honor Block Program" and he has remained in said program since 2002. (RT 34; EX. #10)

Petitioner contends that he has done everything that he has been told and/or recommended of him by previous BPT Hearings; and has met all the recommendations that have been demanded of him throughout a period of over 30 years of incarceration (RT. 38-39, 40-41, 43; EX. #7-#10)

Given the overwhelming evidence in the record that shows Petitoner's adherence to the recommendations demanded of him trhoughout the years and in particular the previous BPT Hearing, Commissioner Bentley's statement as basis to deny parole is incomprehensible and prejudice. He stated:

"Mr. Alve, you kind of got this attitude that you're going to do it your way. And that's fine you can ignore the recommendations of the Board, but then we're going to hold it against you at future Hearings." (RT. 43)

E.    BPT Penal's Recommendations

BPT Commissioners recommended to Petitioner to "Get self-help "AA"", notwithstanding doctor has recommended no more treatment programs within the prison system; but recommeded it on "parole outpatient setting" (EX. #11)

Further, Commissioner Sawyer's statement pertinent to her recommendation of "AA" self-program is contradictory. She states:

"We all know when we are faced with life, we look to, sometimes, we look to chemicals to reduce that stress level. And we all know that it's not, it's not sufficient, but it's something that this Board wants you to do, is to get you some self-help. It doesn't necessarily have to be AA, but AA has got some structure. AA has got some tentacles outside, so that you can go to San Diego and you can continue on with the program, just like-- if you decide to do this, you don't have to if you don't want to..." (RT68-69)

13

First, unlike Presiding Commissioner Sawyer, who "when faced with life" looks to chemicals [drugs/alcohol] to reduce her stress level, Petitioner has lived for over 30 years in an environment which level of stress are unimaginable, yet the record shows that Petitioner has not had the "need" to look to chemicals to face life. (See Ex. #11) So apparently, the first part of her paragraph was refering to her own chemical dependency "When facing problems" The second part of the paragraph she contradicts herself. She first recommends "AA"; but says, "It doesn't necessarily have to be AA" And in her confused mind she further states: "so that you can go to San Diego and continue on with the program" Yet, she ends by saying: "if you decide to do this, you don't have to if you don't want to..." (RT 68-69)

Moreover, although the record shows that BPT Commissioners stated that the CDC-115's were not going to be used in the "decision making" due to the Institution appealing them at Court [Super. Court No. EHC00572 (D046858); Super. Court No. EHC00581 (D046857)] yet, the fact that in the Recommendation the Commissioners recommended "No more 115's or 128-A" gives evidence that the 115's and 128-A ,relevant to the Petitioner's Habeas Corpus Complaint against Staffs' Malfeasance (Retaliation /Reprisals, etc.) were, in fact, considered in the decision making. Had there not been considered, there would have been no need to make the "Recommendation" **"No more 115's or 128-A's"** (EX. #3)

Here, besides the information on the commitment offense, no other "relevant" information" that was available to the BPT Panel that bore on Petitioner's suitability for parole was considered. As was stated by Presiding Commissioner, Sawyer: "...factor of unsuitability being the commitment offense." (RT 67-72)

Given the evidence and the "Objective" of both §2402 and the Indeterminate Sentence Law (ISL), Petitioner's continued incarceration in face of overwhelming

14

evidence of rehabilitation and evidence that indicate an enhanced ability to function within the law upon release, is completely inconsistent with BPT Statutes and the Law. Penal Code §3041(a)(b), California Code of Regulations §2402(a); In re Fain (1976) 65 Cal. App. 3d 376, 389; In re Stanley (1976) 54 Cal. App. 3d 1030; Dunn V U.S. Parole Commission (10th Cir. 1987) 818 F 2d 745.

In Petitioner's record, there is no evidence to suggest that Petitioner poses an unreasonable risk to society. All the evidence before the Commissioners supported a finding of suitability. The evidence shows that Petitioner is neither unpredictable nor a threat to others. He has conducted himself well in prison for over 30 years and has availed himself of educational and vocational opportunities (RT. 66; Ex. #7-#11)

In Petitioner's Central File Record that accompses a period of over 30 years, there is no record of violence; to the contrary, Petitioner's record reflects he has dedicated all histime to educational endeavors and teaching others the skills that he has acquired throughout his encarceration. ((RT 54-55; EX. #7-#10)

The record also shows that Petitioner does not have a history of violence, Juvenile nor adult.(RT 17;63) Therefore,there is no "escalating pattern of criminal conduct or violence." There is neither concerns nor history of mental problems (EX. #11). The record also shows that Petitioner had and has maintained strong family ties. The letters of family support reflect the strong ties he have had throughout incarceration reaching new generations of family members who were born after his encarceration--nephews and nieces ranging from ages: 18 to 30 years. (RT. 55) In addition to the above family support, Petitioner counted with 1,812.00 to assist him with immediate expenditures upon his release.(RT. 20)

Petitioner argues that there must be a meaning to the sentence of 7 years to Life with [possibility of] parole. There must be a limit in which 'Life' ends and 'parole' begins. because if Life means "till death" and parole "to go out of prison in a coffin", as was maintained by the BPT Commissioners, irregardless if the prisoner meets all demanding criteria for parole (RT 71-72), then the California Parole Statutes do not create an "expectation

of freedom" nor a "liberty interest" dependent upon "post-conviction conduct" and "Rehabilitation" within the walls of the California Deapartment of corrections (CDCR) as is so propagated by the Parole Statutes; and hence the BPT Hearing Procedure is a meaningless process designed to deceive the prisoner into believing that he will be freed if he strives and meets all the demanding criteria for parole in the midst of a violent, chaotic environment. For what purpose is there in appearing before the BPT Hearings to continuously be denied parole on the basis of the "Commitment Offense" alone, notwithstanding meeting all the demanding criterial for parole. (RT. 40, 55, 70, 72) Penal Codes §3041 (a)(b), §2402; Ex Parte Harris 80 Cal. App. 2d 173 (App. 1st Dist. 1947), 181 P. 2d 433; People V Morse (1964) 60 Cal. 2d 631; In re Seabock (1983) 140 Cal. App. 3d 29-32.


## BPT PAROLE DENIAL VIOLATED PETITIONER'S LIBERTY INTEREST (§3041)

## II


The federal courts have found that the language of Penal Code 3041 creates a liberty interest in release on parole, which is protected by the procedural safeguards of the Due Process Clause Biggs V Terhume (9th Cir. 2003) 334 F 3d 610, 614; McQuillion V Duncan (9th Cir. 2002) 306 F 3d 895, 902-903; See also Rosenkrantz, supra, 29 Cal. 4th at 653.

The language in the State's statutory scheme of Penal Code §3041 is clear and unambiguous in its legisaltive purpose. Under the Indeterminate Sentence Law (ISL), a prisoner is entitled to parole when he no longer is an unreasonable risk to the public P.C. §3041(a)(b); §2402(a). Thus the intent of the law is to release prisoners when they are ready to reenter society, not to punish them

for ever by continued incarceration In re Minnis, supra, 7 Cal. 3d at 644. The determination of when a prisoner is ready for release necessarily entails an investigation into his post-conviction conduct; and the factor in determining whether a prisoner is suitable for parole is public safety. Therefore, if the prisoner is suitable under the regulatory criteria set forth in Penal Codes §§3041 and §2402, then parole denial violates a prisoner's "liberty interest".

Here, the BPT reduced petitioner's 30 years of prison conduct to a single compound sentence:

> "These positive aspects of your behavior does not outweigh
> the factors for suitability, being the commitment offense."

(RT. 66-67, 72 at line 11). This line of reasoning is completely inconsistent with the Indeterminate Sentence Law and utterly irrational. Parole is not dependent upon "outweighing" the "Commitment Offense" but on evidence that the prisoner no longer is an unreasonable risk to the public. The intent of the law is to release prisoners when they are ready to reenter society not to keep them until they "outweigh" the "Commitment Offense." (§3041) Moreover, how is a prisoner expected to "outweigh" the "Commitment Offense" to be entitled to parole? An act made in the past can never be changed, modified, nor outweighed by virtue of that Act having been made in the past. It is only the future that can be outweighed by virtue of Acts being done in the present. 1/

As was explained in Part I, at pages 7-9, 12-13 and Exhibits hereto attached, Petitioner has met all the regulatory criteria for parole. The Central File Record which encompasses a period of over 30 years, there is no record of drug involvement, no record of prison gang involvement, no record of violence whatsoever. The Central File Record shows that his work performance throughout his incarceration has been from excellent to exceptional and he is described in numerous Laudatory Chronos as responsible, professional, and a workhorse; moreover, he has participated and taken advantage of all educational opportunities that had been available to him: GED, High-School, College (Ex. #7). In addition, he has acquired several marketable skills (RT. 55); and has parti-cipated in the Honor Block Program, at Calipatria State Prison, for the past 5 years.

---

2/ The verb to "outweigh" means "to be more important, valuable, etc. than" (Webster's New World Dictionary, 4th Eddition, at page 1025.)

Here, the BPT denial did not conform to the purpose and intention of the lawmakers' construction of Penal Code's §3041 clear and unambiguous language, i.e., a prisoner is entitled to parole when he no longer is an unreasonable risk to the public.

## State Court's Decision Is Contrary To The BPT Statutes Governing Parole Suitability

### III

The State court's findings are not supported by the evidence in the record. Here, the Court states that the Board based its decision on the offense and Petitioner's "prior adult criminal history." The Record, however, belies the Court's findings, There is no evidence that Petitioner have had any "adult criminal history" prior to the commitment offense. (RT. 17) In fact, there is no evidence whatsoever that Petitioner had had a criminal history of violence neither adult nor juvenile (RT. 17).

In its findings., the Court also noted that the Board noted that Petitioner had "continued to receive disciplinary reports, including one in 2003" and adds, "Alve had received four disciplinary violations, the last one in 2003."( EX. #12 at page 4) However, the Court failed to consider the Rule Violations on which they were issued against Petitioner. For example, in 1993, a CDC-115 disciplinary violation was issued against Petitioner for "having intervene in a fight to save a prisoner from being killed", i.e., as a result of Petitioner having jeopardized his life to safe another man's life Administration issued him a CDC-115 Disciplinary Rules Violation and punished him to 10 days of confinement to Quarters (CTQ) for having intervened in a fight that resulted in the saving of a man's life. Also, as to the two (2) CDC-115 Disciplinary Rule Violations that were issued against Petitioner in 2003, these were issued in retaliation against Petitioner for he having exercised his right to complain against Staffs' unlawful Actions.

The record shows that on July 24, 2003, Petitoinerd submitted a CDC-602 Group Appeal against prison guards working at a Work-Change Area. The Group Appeal dealt with the manner in which strip-searches were being conducted by

18

prison staff involved.  In response to the Group Appeal, prison staff retaliated against Petitioner for having he written the Group Appeal and against other prisoners for having participated in signing  the Group Appeal (See Ex. #13).

On December, 2004, after having exhausted all available administrative remedies, Petitioner approached the Courts to seek relief.  On May 3, 2004, the Superior Court, Imperial County, granted relief in Case No. EHC00572; and on May 10, 2004, the same Court granted relief in Case No. EHC00581 (See Ex. #14).

The People appealed both Cases and on May 11, 2006, the Court of Appeal ordered both cases remanded back to the Warden (Appeal No. D046858; and D046857).

On September 22, 2006, the Superior Court, Imperial County issued an Order remanding Case No. D046857 back to the Warden  pursuant to the Fourth Appellate District ruling. (See Ex. #15).  On November of 2006, Petitioner was found "NOT GUILTY" of the charge of REFUSING TO OBEY  ORDERS [CDC-115. Log# 07-03-B81R. Court of Appeal, Fourth Appellate District, Case No. D046857]  (See Ex. #16).

On June of 2007, Administration acknowledged the Court of Appeals' Court  in Case No. D046858, but  Administration's Appeals Office refused to process the appeal. Therefore, on August  30th, 2007, Petitioner approached the Superior Court, Imperial County, via a Motion  for a Mandamus Order to compel Respondent's compliance with the Court of Appeals' ruling, issued on May 17, 2006.  (See Ex. #17)

## C.    Conclusion

Given the evidence and the "objective" of §3041, §2402 and the Indeterminate Sentence Law (ISL), Petitioner's continued incarceration in the face of overwhelming evidence of rehabilitation and evidence that indicate an enhanced ability to function within the law upon release, is completely inconsistent with BPT Statutes and the Law.

Under the Indeterminate Sentence Law (ISL), a prisoner is entitled to parole when he no longer is an unreasonable risk to the public (§3041(a)(b); §2402(a)).

Petitioner's post-conviction record encompases a period of  32 years. Throughout this period  of  incarceration, Petitioner has never received a CDC-115 Disciplinary Violation for violance against staff nor prisoners; neither has he  received a CDC-115 Disciplinary Violation for "criminal activities", such as for Prison Gang involvement, drugs , alcohol, s tabbings.  At the contrary, Petitoner's endeavors have been focus in education, vocational skills and self-help programs as the record shows  and the State Court has acknowledged  **/**  (See Ex. #12)

/ / / /

/ / / /

/ / / /

WHEREFORE, Petitioner requests to this Court to grant relief sought and set aside the Board of Prison Terms' decision on parole suitability; and order a parole date to be set.

Dated: **1/23/08**

Respectfully submitted,

ALEJANDRO ALVE, .B-77176 (B2-239L)

20

---

**/  The  Disciplinary Violations referred to  in the Court Order issued on 2003, relate to Case No. D046857.  A CDC-115 Rule Vilation given in reprisal against petitioner for having submitted a Group Appeal.  Petitioner was found "NOT GUILTY" in November 2006 (See Ex. #16)