1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   ALEJANDRO ALVE,                 )  Civil No. 08-0162-W(WVG)
                                     )
12                   Petitioner,     )  REPORT AND RECOMMENDATION
                                     )  DENYING PETITION FOR WRIT
13   v.                              )  OF HABEAS CORPUS
                                     )
14   L. E. SCRIBNER, Warden,         )
                                     )
15                   Respondent.     )
                                     )
16   _____)

17

18       Petitioner Alejandro Alve (hereafter "Petitioner"), has filed

19   a Petition for Writ of Habeas Corpus. Respondent L. E. Scribner[1]

20   (hereafter "Respondent") has filed an Answer to the Petition.

21   Petitioner has filed a Traverse to Respondent's Answer. The Court,

22   having reviewed the Petition, Answer, Traverse and all the documents

23   submitted by the parties, hereby RECOMMENDS that the Petition for

24   Writ of Habeas Corpus be DENIED.

25

26

27   _____

28   [1]      Petitioner is housed at Calipatria State Prison. Leland McEwen is
             the Acting Warden of Calipatria State Prison. Therefore, Mr. McEwen
             is the proper Respondent in this action.

                                    1                           08cv0162

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I

PROCEDURAL HISTORY

Petitioner, a state prisoner proceeding *pro se*, was sentenced to death following a 1976 conviction by a jury of two counts of first degree murder and assault. Petitioner appealed his convictions and sentence. The appeal resulted in reduction of the sentence of death to an indeterminate sentence of seven years to life imprisonment with the possibility of parole and a retrial to address Petitioner's sanity. A second jury found that Petitioner was sane when he committed the offenses. Petitioner appealed that decision. The judgment was affirmed on appeal. (Respondent's Lodgment No. 6 at 1).

On June 30, 2008, the Court issued a Report and Recommendation granting Respondent's Motion to Dismiss because the Petition was time-barred.[2/] However, four days prior to the issuance of the Report and Recommendation, Respondent withdrew his Motion to Dismiss because he determined that Petitioner had timely filed his Petition. Therefore, on September 10, 2008, the District Judge assigned to this case declined to adopt the Report and Recommendation and stayed the proceedings in this case pending the outcome of the Ninth Circuit's *en banc* decision on rehearing of <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008), *reh'g en banc granted by* 527 F.3d 797 (9th Cir. 2008), *vacated by* <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th Cir. 2010) (*en banc*)[3/]. Among other things, the <u>Hayward</u> *en banc* decision

---

[2/]    The Report and Recommendation was issued by Hon. Leo S. Papas, United States Magistrate Judge, Ret.

[3/]    The September 10, 2008 Order directed Respondent to re-initiate the proceedings in this case within sixty (60) days after the <u>Hayward</u> decision became final. (September 10, 2008 Order at 3).

08cv0162

answered the questions in this Circuit "whether federal constitu-
tional law imposes on the states a requirement for some quantum of
evidence to support a state's denial of parole," and "whether, even
if there is no general federal quantum of evidence requirement,
applicants for parole in California, under the state's current laws,
may obtain federal habeas review of whether there is 'some evidence'
supporting a negative parole decision." <u>Hayward</u>, 603 F.3d at 549.

Petitioner alleges that the Board of Parole Hearings
(hereafter "BPH"), violated his Fourteenth Amendment due process
rights in denying him parole at a subsequent parole suitability
hearing on November 16, 2005.[4/] Respondent contends that the
California Court of Appeal's decision regarding the BPH's parole
suitability decision is not infirm.

## II

### FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and
presumes them to be correct. Petitioner may rebut the presumption of
correctness, but only by clear and convincing evidence. 28 U.S.C.A.
§ 2254(e)(1)(West 2006); <u>see also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36

---

[4/]   Petitioner also informs the Court that his parole suitability
hearing was delayed from its originally scheduled date because the
BPH did not have a current psychological report pertaining to him.
He specifically details his efforts to obtain a psychological
report. He suggests that the BPH and prison officials delayed in
having him seen by a mental health evaluator.

Petitioner also claims that at the parole hearing, BPH Deputy
Commissioner Bentley displayed a personal bias against, and
animosity toward, him, thereby prejudicing him. Specifically,
Petitioner alleges that Commissioner Bentley's comments showed a
bias and animosity regarding Petitioner's filing a 2002 lawsuit
against the state for retaliation by prison staff. However, a fair
reading of the parole hearing transcript reveals that Commissioner
Bentley simply sought from Petitioner information regarding the
lawsuit. After Petitioner explained the basis of the lawsuit and its
procedural status, Commissioner Bentley stopped discussing the
matter and did not mention it again. Therefore, Petitioner's claim
in this regard is unsubstantiated.

08cv0162

1    (1992) (holding findings of historical fact, including inferences

2    properly drawn from these facts, are entitled to statutory presump-

3    tion of correctness). The facts as found by the California Court of

4    Appeal are substantially as follows:[5]

5              At a November 2005 parole consideration hearing, the
               BPT found Petitioner unsuitable for parole.  The Board
6              reasoned that Petitioner would pose an 'unreasonable
               risk and danger to society or threat to public safety'
7              if paroled. The Board further based its decision on
               the cruel and callous nature of the offenses and
8              Petitioner's prior adult criminal history.  It further
               noted that Petitioner continued to receive disciplin-
9              ary reports, including one in 2003. Also, a psycholog-
               ical report indicated that Petitioner's potential for
10             violence might be at an above average level.
     (Respondent's Lodgment No. 6 at 1-2)
11
               The California Court of Appeal described Petitioner's crimes
12
     substantially as follows:
13
               On October 3, 1975, David Stephens (hereafter
14             "Stephens") and Gary Dores (hereafter "Dores") locked
               the doors of a bar and prepared to leave the bar out
15             the bar's back door. Petitioner approached Stephens
               and Dores, pointed a gun at them and demanded money.
16             Dores complied and gave Petitioner money from inside
               the bar. Then, Petitioner ordered Dores to orally
17             copulate him. A few minutes later, Dores and Peti-
               tioner struggled with Petitioner's gun. Two shots were
18             fired. Stephens hid behind the bar. Petitioner ordered
               Stephens to get out from behind the bar and ordered
19             Stephens and Dores to go into the restroom and take
               off their clothes. Petitioner said that he was going
20             to kill Stephens and Dores. Petitioner locked Stephens
               in a closet. While Stephens was in the closet, he
21             heard a commotion and a gun shot.

22             Thereafter, Petitioner ordered Stephens out of the
               closet.  Petitioner asked Stephens for a beer.
23             Stephens gave Petitioner a beer before Petitioner
               locked him in the closet again. While Stephens was in
24             the closet, he heard another gun shot followed by the
               sound of the closing of the bar's back door.
25
               Stephens broke out of the closet and called the
26             police.  The police found Dores dead on the floor. He
               was naked and had a knife protruding from his abdomen.
27

28   [5]    The California Court of Appeal decision is dated October 23, 2006.
            Hayward was decided on April 22, 2010.

                                                                    08cv0162

1
2
Dores had been shot twice in the head and stabbed in the neck. His genitals had been cut five times.

3
4
5
6
7
On November 9, 1975, police officers received a call concerning a burglary in progress.  After the officers arrived at the scene, they entered the house and followed a trail of blood leading into a bedroom. They found a body in the bedroom doorway. The victim's 83-year-old mother, who lived in the house with the victim, stated that the assailant had beaten her and ransacked the house.  Police apprehended Petitioner. An investigation of the crime scene indicated that the victim had been stabbed in the chest with a butcher knife.

8
(Respondent's Lodgment No. 6 at 3).

The Court of Appeal, using the then existing federal and

9
10
state law, found that the nature of Petitioner's offenses amounted

11
to "some evidence" that the crimes committed were cruel and callous.

12
Further, the Court noted that the BPH had considered a psychological

13
report on Petitioner that stated that Petitioner's future potential

14
for violence might be at an above average level if he encountered

15
difficulties in the transition from inmate to parolee.  Therefore,

16
"some evidence" supported the BPH's decision. (Respondent's Lodgment

17
No. 6 at 4).

III

18
STANDARDS FOR FEDERAL HABEAS CORPUS RELIEF

19
20
A federal court "shall entertain an application for a writ of

21
habeas corpus in behalf of a person in custody pursuant to the

22
judgment of a State court only on the ground he is in custody in

23
violation of the Constitution or laws or treaties of the United

24
States."  28 U.S.C.A. § 2254(a).  Federal habeas courts are bound by

25
a state's interpretation of its own law.  Estelle v. McGuire, 502

26
U.S. 62, 68 (1991) (federal courts may not reexamine state court

27
determinations on state-law questions); Jackson v. Ylst, 921 F.2d

28
882, 885 (9th Cir. 1990) (federal courts "have no authority to

review a state's application of its own laws"); Oxborrow v.

08cv0162

1   <u>Eikenberry</u>, 877 F.2d 1395, 1400 (9th Cir. 1989) ("errors of state

2   law do not concern us unless they rise to the level of a constitu-

3   tional violation").

4          Federal habeas petitions filed after April 24, 1996 are

5   governed by the Antiterrorism and Effective Death Penalty Act of

6   1996 ("AEDPA").  *See* <u>Lindh v. Murphy</u>, 521 U.S. 320, 322-23 (1997).

7   AEDPA establishes a "'highly deferential standard for evaluating

8   state-court rulings,'" requiring "that state-court decisions be

9   given the benefit of the doubt." <u>Woodford v. Visciotti</u>, 537 U.S.

10  19, 24 (2002), *quoting* <u>Lindh</u>, 521 U.S. at 333 n.7. The petitioner

11  has "the burden of rebutting the presumption of correctness by clear

12  and convincing evidence." 28 U.S.C. § 2254(e)(1).  Federal habeas

13  relief is warranted only if the result of a claim adjudicated on the

14  merits by a state court "was contrary to, or involved an unreason-

15  able application of clearly established Federal law, as determined

16  by the Supreme Court of the United States," or "was based on an

17  unreasonable determination of the facts in light of the evidence

18  presented in the State court proceeding." 28 U.S.C. § 2254(d); *see*

19  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  A federal court applies

20  AEDPA standards to the "last reasoned decision" by a state court.

21  <u>Campbell v. Rice</u>, 408 F.3d 1166, 1170 (9th Cir. 2005); *see* <u>Ylst v.</u>

22  <u>Nunnemaker</u>, 501 U.S. 797, 803 (1991) ("Where there has been one

23  reasoned state judgment rejecting a federal claim, later unexplained

24  orders upholding the judgment or rejecting the same claim rest upon

25  the same ground").

26

27          A. <u>Due Process And Review Standards Applicable</u>
                 <u>To Denials Of Parole</u>
28               1.  <u>Federal Standards Of Review</u>

6

08cv0162

1    A due process claim raises two questions: "the first asks
2    whether there exists a liberty or property interest which has been
3    interfered with by the State; the second examines whether the
4    procedures attendant upon that deprivation were constitutionally
5    sufficient." Kentucky Dep't of Corrections v. Thompson, 490 U.S.
6    454, 460 (1989) (citations omitted). "[A]n individual claiming a
7    protected interest must have a legitimate claim of entitlement to
8    it" arising either from "the Due Process Clause itself" or from "the
9    laws of the State." Id. (citation omitted). State-created rights can
10   give rise to liberty interests that may be enforced as a matter of
11   federal law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

12   An en banc panel of the Ninth Circuit recently clarified the
13   standards that federal habeas courts must apply in reviewing
14   California prisoners' challenges to parole denials on due process
15   grounds. Hayward, 603 F.3d 546. The Hayward court acknowledged that
16   both the Ninth Circuit and the California Supreme Court "have been
17   engaged in modification of the law to determine what limits there
18   are on denial of parole." Id. at 552. Among other things, "Hay-
19   ward's appeal addresses what if anything the federal Constitution
20   requires as a condition of denial of parole." Id., citing 28 U.S.C.
21   § 2254(a).

22   In particular, one question presented was whether "federal
23   constitutional law imposes on the states a requirement for some
24   quantum of evidence to support a state's denial of parole."
25   Hayward, 603 F.3d at 549. The Hayward court distinguished the
26   deprivation of good time credits earned by prisoners while incarcer-
27   ated, creating "a liberty interest of the most fundamental sort,"
28   from denial of release on parole, a decision entailing the "discre-

08cv0162

1   tionary assessment of a multiplicity of imponderables." Id. at 557

2   (citations omitted). "The proposition that the Supreme Court has

3   required 'some evidence' of anything derives from a misunderstanding

4   of the differences between 'good time' and parole." Id. at 555. The

5   Hayward court held: "(I)n the absence of state law establishing

6   otherwise, there is no federal constitutional requirement that

7   parole be granted in the absence of 'some evidence' of future

8   dangerousness or anything else." Id. at 561, 563 ("We overrule any

9   decisions suggesting that the federal constitution imposes a

10  requirement of 'some evidence' of future dangerousness without

11  regard to state law").[6/]  Nevertheless:

12              Although the due process clause does not,
            by itself, entitle a prisoner to parole in
13          the absence of some evidence of future
            dangerousness, state law may supply a
14          predicate for that conclusion. "[D]espite
            the necessarily subjective and predictive
15          nature of the parole-release decision,
            state *statutes* may create liberty interests
16          in parole release that are entitled to
            protection under the Due Process Clause."
17  Hayward, 603 F.3d at 561, adding emphasis *and* quoting Board of
    Prison Terms v. Allen, 482 U.S. 369, 371 (1987).

18

19          The Ninth Circuit has succinctly extracted pertinent holdings

20  from the Hayward decision in Pearson v. Muntz, 606 F.3d 606 (9th

21  Cir. 2010). The Pearson court noted,

22              A state has no duty under the federal Constitution to
            create any parole system at all, let alone a parole
23          system in which a prisoner must be released unless
            certain requirements have been satisfied. Once a state

24

25  ─────────────────
    [6/]     "To the extent our prior decisions including Biggs v. Terhune[, 334
26  F.3d 910 (9th Cir. 2003)], Sass v. California Board of Prison
    Terms[, 461 F.3d 1123 (9th Cir. 2006)], Irons v. Carey[, 505 F.3d
27  846, 850-51 (9th Cir. 2007)] and our panel decision in this case
    might be read to imply that there is a federal constitutional right
    regardless of whether state law entitles the prisoner to release, we
28  reject that reading and overrule those decisions to the extent they
    may be read to mean that." Hayward, 603 F.3d at 555.

1    creates such a system, however, it must operate it in
     a manner that comports with due process.
2  Id. at 611. (citations omitted).

3      The Pearson court also noted that federal courts "must apply
4  the California 'some evidence' test on federal habeas review under
5  AEDPA." Id. at 608.  It is the state law "that gives rise to the
6  'interests' on the part of state prisoners that may be enforced as
7  a matter of federal law." Id. at 609. Federal habeas courts *must*
8  "decide whether the California judicial decision approving the
9  governor's decision rejecting parole was an 'unreasonable applica-
10 tion' of the California 'some evidence' requirement, or was 'based
11 on an unreasonable determination of the facts in light of the
12 evidence.'" Id. at 609, quoting Hayward, 603 F.3d at 563. "By
13 holding that a federal court may review the reasonableness of the
14 state court's application of the California 'some evidence' rule,
15 Hayward necessarily held that compliance with the state requirement
16 is mandated by federal law, specifically the Due Process Clause."
17 Id. at 609.

18      Inasmuch as "Hayward specifically commands federal courts to
19 examine the reasonableness of the state courts' application of the
20 California 'some evidence' requirement, as well as the reasonable-
21 ness of the state court's determination of the facts in light of the
22 evidence," the federal court must examine "*how* the state court
23 applied the requirement." Id. at 609, quoting Hayward, 603 F.3d at
24 562-563.  There must actually be "'some evidence of future danger-
25 ousness' justifying the denial of parole," with denial of parole not
26
27 justified "merely because the state court purported to identify some
28 evidence of future dangerousness." Id. at 609.

08cv0162

1    A psychological report about the inmate may provide "some

2  evidence" of "future dangerousness" that justifies the denial of

3  parole. <u>Boyd v. Almaquer</u>, 677 F.Supp 2d 1221, 1232 (C.D. Cal. 2009);

4  <u>Brazil v. Davison</u>, 639 F.Supp 2d 1129, 1150 (C.D. Cal. 2009); <u>see</u>

5  <u>also</u> <u>Acevedo v. Yates</u>, 2010 WL 3582433 at *8 (E.D. Cal. 2010).

6              2.   <u>California Parole Statute And Standards</u>

7    Under California law, prisoners subject to indeterminate life

8  sentences "may serve up to life in prison, but they become eligible

9  for parole consideration after serving minimum terms of confine-

10 ment." <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1078 (2005). "[L]ife

11 inmates' actual confinement periods within the statutory range are

12 decided by [the Board of Prison Terms]." <u>Id.</u> The Governor may review

13 the Board's parole decisions and is authorized to reverse or modify

14 them, applying the same standards as the Board applies. C<small>AL.</small> C<small>ONST</small>

15 art. V, § 8, subd. (b); Cal. Penal Code § 3041.2.

16   The manner in which the Board is to make parole decisions is

17 addressed in Cal. Penal Code § 3041 and implementing regulations.

18 The Board "must apply detailed standards when evaluating whether an

19 individual is unsuitable for parole on public safety grounds."

20 <u>Dannenberg</u>, 34 Cal.4th at 1096 n. 16; <u>see also</u> <u>In re Rosenkrantz</u>, 29

21 Cal.4th 616, 677 (2002) (the Board's discretion is circumscribed by

22 the requirement "the decision must reflect an individualized

23 consideration of the specific criteria and cannot be arbitrary and

24 capricious"). "Regardless of the length of time served, a life

25 prisoner shall be found unsuitable for and denied parole if in the

26 judgment of the panel the prisoner will pose an unreasonable risk of

27 danger to society if released from prison." Cal. Code Regs., tit.

28

08cv0162

15, §§ 2281(a), 2402(a).[7]   The regulations guide the manner in which the evidence is to be considered.

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during, and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.
> Cal. Code Regs., tit. 15, §§ 2281(b), 2402(b).

The Board must consider both circumstances tending to show unsuitability[8] and circumstances tending to show suitability[9] in the particular case.  <u>See</u> Cal. Code Regs., tit. 15, § 2401 ["A parole

---

[7]   Sections 2281(a) and 2402(a) "are identical." <u>In re Lawrence</u>, 44 Cal.4th 1181, 1202 n.5 (2008). Cal.Code Regs., tit. 15, § 2402 provides the Parole Consideration Criteria And Guidelines For Life Prisoners applicable to murderers..."

[8]   Guideline circumstances tending to show unsuitability include: (1) the heinousness or cruelty of the commitment offense, considering such factors as multiple victims "attacked, injured or killed in the same or separate incidents;" "the victim was abused, defiled or mutilated during or after the offense;" the offense "was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering;" (2) the prisoner's previous record of violence, "particularly if the prisoner demonstrated serious assaultive behavior at an early age;" (3) unstable social history in relationships with others; (4) psychological factors; and (5) institutional behavior engaging in serious misconduct while incarcerated.  Cal. Code Regs. § 2402(c)

[9]   Guideline circumstances tending to show suitability include: (1) no juvenile record; (2) stable social history; (3) signs of remorse, such as performing acts or giving "indications he understands the nature and magnitude of the offense;" (4) the crime was the result of significant stress; (5) lack of any significant history of violent crime; (6) the prisoner's age reduces the probability of recidivism; (7) realistic plans for the future upon release, or development of marketable skills usable upon release; and (8) institutional behavior "indicating an enhanced ability to function within the law upon release." Cal. Code Regs. § 2402(d).

08cv0162

date shall be set if the prisoner is found suitable for parole under Section 2402(d)," but "(a) parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c)"]; see Dannenberg, 34 Cal.4th at 1086. However, "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th 1181, 1212 (2008). A decision denying parole must articulate reasons that are both grounded in evidence *and* rationally related to the statutory public danger basis for denial. "[I]t is not enough that there is some evidence to support the factors cited for the denial; that evidence must also rationally support the core determination required by the statute before parole can be denied, *i.e.*, that a prisoner's release will unreasonably endanger public safety." In re Roderick, 154 Cal.App.4th 242, 263-64 (2007), citing, *inter alia,* In re Lee, 143 Cal.App.4th 1400, 1409 (2006) ("Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety").

> The California parole statute provides that the Board of Prison Terms 'shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individ-ual.'...[S]ome evidence of future dangerousness is a necessary predicate for denial of parole."

Hayward, 603 F.3d at 562, quoting Cal. Penal Code § 3041(b).

> As a matter of California law, 'the paramount consid-eration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an

aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety. The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, supports the inference of dangerousness. **Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety.**

Hayward, 603 F.3d at 562 (emphasis added)(footnotes omitted), quoting Lawrence, 44 Cal.4th at 1210, 1213-14.

"The crucial determinant of whether the prisoner gets parole in California is 'consideration of the public safety.'" Hayward, 603 F.3d at 561, citing Lawrence, 44 Cal.4th 1181 and In re Shaputis, 44 Cal.4th 1241 (2008). "[T]he California Supreme Court established in [those] two decisions... that as a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California," creating a liberty interest.[10] Id. at 562, 563 ("There was some evidence of future dangerousness, so [Hayward's] parole was [properly] denied, and the district court correctly denied the writ.")

While judicial review of a parole denial is "extremely deferential," the purpose of the review is to ensure the result was supported by "some evidence." Hayward, 603 F.3d at 561-62; see also Rosenkrantz, 29 Cal.4th at 660; Lawrence, 44 Cal.4th at 1212,["(W)hen a court reviews a decision of the Board or the

---

[10] The Hayward court emphasized the "right in California to parole in the absence of some evidence of one's future dangerousness to the public arises from California law." Hayward, 603 F.3d at 563. The *en banc* majority declined to decide "whether the California parole scheme establishes a predicate for imposing (the liberty interest) as a matter of federal constitutional law." Id. at 562 ("State law already does what Hayward would have federal constitutional law do," so that the court found it need "not decide whether a right arises in California under the United States Constitution to parole in the absence of some evidence of future dangerousness").

Governor, the relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." citing, *inter alia,* <u>Rosenkrantz</u>, 29 Cal.4th at 658 and <u>Dannenberg</u>, 34 Cal.4th at 1071. Thus, a reviewing court must verify that evidence of the factors recited as the reasons for denial supports the "core determination" the prisoner would pose a public danger if released. <u>Lawrence</u>, 44 Cal.4th at 1212 ["Under the statute and governing regulations, the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public."] Therefore, California's "some evidence" standard requires a rational nexus between the prisoner's "current circumstances" and his or her current dangerousness in order "to provide the 'modicum of evidence' necessary" for a legitimate denial of parole. <u>Id.</u> at 1227 (setting aside the Governor's action in vacating the Board's grant of parole through reliance on the "immutable and unchanging" circumstances of the "egregious" commitment offense, on grounds that decision was not supported by "some evidence" of the prisoner's current dangerousness).

In summary, the Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits states from depriving persons of protected liberty interests without due process of law. As construed by the Ninth Circuit in <u>Hayward</u>, California law explicitly creates a right to release on parole in the absence

14

08cv0162

of "some evidence" of current dangerousness. Therefore, California law creates by statute a liberty interest in release on parole. As a result, eligible prisoners serving indeterminate life sentences who challenge the decisions of the BPH state claims that are cognizable on federal habeas review. Denial of parole must comport with the state's "some evidence" criteria linking the prisoner's current circumstances to the ultimate finding of present dangerousness.

> Since the 'some evidence' requirement applies without regard to whether the United States Constitution requires it, we in this case, and courts in this circuit facing the same issue in the future, need only decide **whether the California judicial decision approving the governor's decision rejecting parole was an "unreasonable application"... of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence.**

Hayward, 603 F.3d at 562-63, quoting 28 U.S.C. §§ 2254(d)(1)-(2); see also Hayward, 603 F.3d at 569, Berzon, J., concurring in part and dissenting in part (the "some evidence" rule must be applied in light of the deference owed to the factual determinations of state courts under AEDPA).

IV

THE BOARD OF PAROLE HEARINGS DID NOT VIOLATE PETITIONER'S DUE PROCESS RIGHTS WHEN IT DENIED PETITIONER PAROLE

During the parole suitability hearing, the BPH discussed with Petitioner several factors that weighed for and against a grant of parole. The factors that weighed in favor of a grant of parole were that Petitioner had successfully engaged in numerous vocational opportunities while he was in prison (Respondent's Lodgment No. 1 at 38-41), and that he had family members who would provide financial and supportive assistance to him if he was released from prison. (Respondent's Lodgment No. 1 at 20, 29-31). The factors that weighed

08cv0162

against a grant of parole were Petitioner's commitment offense (Respondent's Lodgment No. 1 at 16), several minor disciplinary actions taken against Petitioner while he was in prison (Respondent's Lodgment No. 1 at 32-37), and a July 27, 2005 mental health evaluation submitted by Psychologist John R. Bellinger, Ph.D. (hereafter "Dr. Bellinger"), (Respondent's Lodgment No. 3, Exh. 11, Respondent's Lodgment No. 1 at 48-49).

In the portion of the parole suitability hearing in which the BPH issued its decision, the BPH concluded that Petitioner was "not suitable for parole and would pose an unreasonable risk and danger to society or a threat to public safety if (he was) released from prison." (Respondent's Lodgment No. 1 at 61). In reaching its decision, the BPH noted the following: (1) Petitioner's commitment offenses involved victims that were particularly vulnerable and the crimes were marked by viciousness, cruelty, and callousness. (Respondent's Lodgment No. 1 at 16, 61); (2) Petitioner had a good work history while he was in prison. (Respondent's Lodgment No. 1 at 64); (3) Petitioner had good family support. (Respondent's Lodgment No. 1 at 65); and (4) Petitioner had developed marketable employment skills while he was in prison (Respondent's Lodgment No. 1 at 65-66).

However, the BPH concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability for parole. Specifically, the BPH referred to, and relied on, Petitioner's commitment offenses and the conclusions contained in Petitioner's mental health evaluation submitted by Dr. Bellinger. Dr. Bellinger's mental health evaluation states:

08cv0162

If released to the community, under supervision of his family, his level of dangerousness would be far below that of the average Level IV inmate. **He might become at high risk for acting out if encountering frustrations in the transitions, such as termination of family support, inability to find employment or resumption of alcohol abuse. The latter would certainly put his potential for violence at an above average level.**
(Respondent's Lodgment No. 1 at 48-49, 64-65, Respondent's Lodgment No, 3, Exh. 11)(emphasis added)

    A. <u>Commitment Offense</u>

Under California law, the potential parolee's commitment offense does not provide "some evidence" of current dangerousness "unless the record establishes that something in the (inmate's) pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference that the inmate remains dangerous. <u>Hayward</u>, 603 F.3d at 562 (quoting <u>Lawrence</u>, 44 Cal. 4th at 1212).

Here, neither the Board of Parole Hearings nor the California Court of Appeal found that something in Petitioner's pre- or post-incarceration history, or Petitioner's current demeanor and mental state, supported the inference that Petitioner remained dangerous. Instead, the Court of Appeal stated: "The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole, so long as the (BPH) does not fail to consider all other relevant factors." (Respondent's Lodgment No. 6 at 3).

Therefore, the Court finds that this decision to be an objectively unreasonable application of the California "some evidence" standard because Petitioner's commitment offenses did not provide "some evidence" of his current dangerousness. As a result, the Court of Appeal's decision denying Petitioner parole in this regard was not only an "unreasonable application" of the California

08cv0162

1  "some evidence" requirement, but also was "based on an unreasonable

2  determination of facts in light of the evidence presented." <u>Hayward</u>,

3  603 F.3d at 563 [quoting 28 U.S.C. § 2254(d)(1)-(2)], <u>Acevedo</u>, 2010

4  WL 3582433 at *5-*6.

5      B. <u>Mental Health Evaluation</u>

6      Nevertheless, the Court finds that Dr. Bellinger's conclu-

7  sions noted in his mental health evaluation of Petitioner provided

8  the BPH and the Court of Appeal with "some evidence" of Petitioner's

9  current dangerousness. See <u>Boyd</u>, <u>Brazil</u>, <u>Acevedo</u>, <u>supra</u>. The mental

10 health evaluation specifically found that Petitioner's potential for

11 violence would be at an above average level if he encountered

12 frustrations in the transitions from inmate to parolee. Therefore,

13 the Court finds that the mental health evaluation supports the BPH's

14 and the Court of Appeal's conclusions that Petitioner was not

15 suitable for parole. Consequently, Petitioner's constitutional

16 rights to due process were not violated because the mental health

17 evaluation meets the standards of the "some evidence" inquiry as

18 required by <u>Hayward</u> and <u>Pearson</u>. As a result, the Court RECOMMENDS

19 that Petitioner's claim be DENIED.

20                                    V

21                 <u>CONCLUSION AND RECOMMENDATION</u>

22      After a review of the record in this matter, the undersigned

23 Magistrate Judge recommends that the Petition for Writ of Habeas

24 Corpus be **DENIED** with prejudice.

25      This report and recommendation of the undersigned Magistrate

26 Judge is submitted to the United States District Judge assigned to

27 this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

28

08cv0162

1       **IT IS ORDERED** that no later than <u>January 7, 2011</u>, any party

2   to this action may file written objections with the Court and serve

3   a copy on all parties.  The document should be captioned "Objections

4   to Report and Recommendation."

5       **IT IS FURTHER ORDERED** that any reply to the objections shall

6   be filed with the Court and served on all parties no later than

7   <u>January 21, 2011</u>.  The parties are advised that failure to file

8   objections within the specified time may waive the right to raise

9   those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>,

10  951 F.2d 1153 (9th Cir. 1991).

11  DATED:  December 6, 2010

12

13  _____

                Hon. William V. Gallo

14                  U.S. Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08cv0162